**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SHAYE ROBINSON CASTLEBERRY**, ) an individual Alabama resident, and ) **DANIEL CASTLEBERRY**, an individual ) Alabama resident, ) | |
| ) | **CIVIL ACTION NO.:**_____ |
| Plaintiffs, ) | **JURY TRIAL DEMANDED** |
| ) | |
| v. ) | |
| ) | |
| **OMNI RECOVERY SERVICE OF** ) **ALABAMA, INC.**, an Alabama ) corporation; **JPMORGAN CHASE** ) **BANK, N.A.,** a foreign national banking ) **Association**; and **WINDSOR EQUITY** ) **GROUP, INC.**, a foreign corporation, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

1.     This is an action brought by Plaintiffs, Shaye Robinson Castleberry ("Shaye") and

Daniel Castleberry ("Daniel") (collectively, "Plaintiffs"), for actual and statutory damages,

attorneys' fees and costs for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692, *et seq.* and violation of the automatic stay imposed by the United States

Bankruptcy Court for the Middle District of Alabama, Northern Division, pursuant to 11 U.S.C.

§ 362(a).  Plaintiffs also seek compensatory and punitive damages for the Defendants' violations

of Alabama common law as set forth herein.

**PARTIES**

2.     Plaintiff, Shaye Robinson Castleberry, is a resident citizen of Chilton County,

Alabama.  Shaye is over the age of nineteen (19) years, and is a "consumer" as defined in 15

U.S.C. § 1692a(3).

3.      Plaintiff, Daniel Castleberry, is a resident citizen of Chilton County, Alabama. Daniel is over the age of nineteen (19) years, and is a "consumer" as defined in 15 U.S.C. § 1692a(3).

4.      Defendant, Omni Recovery Services, Inc. ("Omni"), is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Jefferson County, Alabama.  At all times relevant herein, Omni was engaged in the business of repossessing automobiles for creditors.  Accordingly, Omni is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

5.      Defendant, JPMorgan Chase Bank, N.A. ("Chase"), is a national banking association, with its principal place of business in New York City, New York, but which does business in the State of Alabama.

6.      Defendant, Windsor Equity Group, Inc. ("Windsor"), is a corporation organized and existing under the corporate laws of the State of Texas, with its principal place of business in Mesquite, Texas, but which does business in the State of Alabama.  Windsor is engaged in the business of effectuating repossessions of automobiles from national creditors, such as Chase. Therefore, Windsor's primary business is the enforcement of security interests, and Windsor is a "debt collector" as defined in 15 U.S.C. § 1692a(6).  At all times relevant herein, Omni and Windsor acted as repossession agents for Chase.  When used herein, the term "Defendants" shall refer to Chase, Omni and Windsor, collectively.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1692k(d), and 28 U.S.C. §  1331.  The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  With respect to the claim asserted in Count VII herein, Plaintiffs move this Court

to withdraw the reference of such claim to the United States Bankruptcy Court, pursuant to 28 U.S.C. § 157(d), because the other claims asserted herein are outside the reference of the bankruptcy court and are subject to the right to trial by jury.

8.      Venue is proper pursuant to 15 U.S.C. § 1592i(2)(a), in that Shaye signed the financing contract giving rise to Defendants' violations of the FDCPA in Shelby County, Alabama, a substantial portion of the acts or omissions giving rise to these claims occurred in this judicial district, and Omni resides here.

## FACTUAL ALLEGATIONS

9.      Plaintiffs adopt each and every allegation contained in the preceding paragraphs as if the same were set forth fully herein.

10.     In or about November 2010, Shaye financed an "H2 Hummer" (the "automobile") with Chase.

11.     In or about November 2011, Shaye became delinquent in her monthly payments to Chase.

12.     Shortly thereafter, agents, servants, employees and/or independent contractors of Chase and/or Omni began communicating with Plaintiffs.

13.     Defendants began incessantly and continually calling Plaintiffs via telephone, numerous times per day, at all hours of the day and night, and with the intent to annoy, abuse, or harass Plaintiffs.

14.     Defendants initially failed to disclose that they were debt collectors, and that any information obtained from Plaintiffs would be used to collect a debt.

15.     From in or about November 2011 through December 2011, Defendants called Shaye at her place of employment, despite being requested to refrain from doing so.  Moreover,

Defendants repeatedly contacted Plaintiffs' family members (specifically, Shaye's sister and mother, who had absolutely nothing whatsoever to do with the financing and/or payment of Plaintiffs' automobile) with the intent to annoy, abuse, or harass Plaintiffs, by and through said family members.

16.     Plaintiffs received telephone calls and telephone messages from individuals claiming to be "Linda," "Kathy," and "Ms. Robinson," of Chase and/or Omni.  Said calls and messages contained obscene or profane language used in a loud and/or threatening manner, and/or contained language the natural consequence of which was to abuse or annoy Plaintiffs.

17.     In or about December 2011, Plaintiffs made a payment in the approximate amount of One Thousand Two Hundred and 00/100ths Dollars ($1,200.00).  Prior to making the payment, Plaintiffs spoke with an agent, servant and/or employee of Chase, who informed them that the payment would "catch-up" Plaintiffs' account, that making said payment would cause collection efforts to cease, and that Plaintiffs would not "lose their car" if they made the payment.

18.     Subsequent to making the aforementioned payment, and specifically from in or about December 2011 through March 2012, Defendants continued contacting Plaintiffs and continued with the repeated calls and messages containing obscene and/or profane language in a loud and/or threatening manner, or language the natural consequence of which was to abuse or annoy Plaintiffs.

19.     In or about January 2012, Plaintiffs communicated to Defendants that, in accordance with the representations of Chase, Plaintiffs' account was current, that Plaintiffs refused to pay any of the purported "outstanding" or "delinquent" balance on the automobile, and that Plaintiffs wished Defendants to cease further communication.

4

20.    On or about January 17, 2012, Shaye filed Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama, Northern Division.  The bankruptcy was assigned case number 12–30124–DHW13.  Shaye listed herein indebtedness to Chase, secured by the automobile, as a scheduled debt in her bankruptcy petition.  On several occasions thereafter, Plaintiffs explicitly informed Defendants that Shaye had filed for bankruptcy protection.

21.    Despite the fact that Chase had actual and/or constructive knowledge of Shaye's bankruptcy filing, Chase did not properly instruct Windsor and/or Omni to cease repossession activity on the automobile after Shaye's bankruptcy filing and/or Windsor did not properly communicate with Omni to cease repossession activity on the automobile after Shaye's bankruptcy filing.

22.    Defendants did not cease their repossession efforts; instead, said efforts and/or communication with Plaintiffs intensified.  Defendants continued with the harassing, annoying, antagonizing, condescending, unprofessional, and inappropriate calls and messages containing obscene or profane language in a loud and/or threatening manner, or language the natural consequence of which was to abuse or annoy Plaintiffs.

23.    In or about February or March 2012, while the bankruptcy stay was in full force and effect, Plaintiffs received a call and/or message from an agent, servant and/or employee of Omni, informing them that a "warrant would be issued" for Plaintiffs' arrest, and that Defendants "were showing up with the sheriff" to arrest Plaintiffs—neither of which came to fruition.

24.    On or about March 18, 2012, Defendants' repossessed Plaintiffs' automobile.

25.    On March 26, 2012, six (6) days following the repossession of Plaintiffs' automobile, the United States Bankruptcy Court for the Middle District of Alabama, Northern

Division (Hon. Dwight H. Williams, Jr.) entered an Order terminating the Stay concerning the repossession of Plaintiffs' automobile.

**COUNT I**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(ALL DEFENDANTS)**

26.     Plaintiffs adopt each and every allegation contained in the preceding paragraphs as if the same were set forth fully herein.

27.     Defendants have engaged in collection activities and practices in violation of the FDCPA with respect to Plaintiffs and their alleged consumer deb within the past twelve (12) months.

28.     Defendants violated 15 U.S.C. § 1692d(1) by using or threatening to use criminal means to harm the physical person, reputation, or property of Plaintiffs.

29.     Defendants violated 15 U.S.C. § 1692d(2) by the repeated use of obscene or profane language, or language the natural consequence of which was to abuse Plaintiffs.

30.     Defendants violated 15 U.S.C. § 1692d(5) by causing Plaintiffs' telephones, telephones belonging to Plaintiffs' relatives, and/or telephones at Plaintiffs' place of employment to ring, or engaging Plaintiffs in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Plaintiffs and/or any other person at the number(s) called by Defendants.

31.     Defendants violated 15 U.S.C. § 1692e(4) by representing or implying that the nonpayment of Plaintiffs' alleged debt would result in the arrest or imprisonment of Plaintiffs, or would result in the seizure, garnishment, attachment, or sale of Plaintiffs' automobile, when such action and/or actions was/were not lawful and/or when Defendants did not intend to take such action and/or actions.

32.     Defendants violated 15 U.S.C. § 1692e(7) by falsely representing or implying that Plaintiffs committed a crime and/or crimes in order to disgrace Plaintiffs.

33.     Defendants violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect or attempt to collect Plaintiffs' purported debt as set forth herein.

34.     Defendants violated 15 U.S.C. § 1692e(11) by failing to disclose in their initial communication, which was/were oral, that Defendants were attempting to collect a debt, and that any information obtained would be used for that purpose. Moreover, in subsequent communications, Defendants similarly failed and/or refused to disclose that the communication was from a debt collector.

35.     As a proximate result of Defendants' actions, Plaintiffs were caused to suffer actual damage to their credit and credit reputation, worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain, and mental anguish and emotional distress.  Plaintiffs were also caused to incur out of pocket expenses and attorneys' fees.

WHEREFORE, the premises considered, Plaintiffs demand judgment against Defendants, for the following:

A.      Declaratory Judgment that Defendants' conduct violated the FDCPA;

B.      Actual damages for Defendants' violations of the FDCPA as determined by a trial jury;

C.      Statutory damages of $1,000.00 per occurrence from Defendants pursuant to 15 U.S.C. § 1692k(a)(2)(A);

D.      Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and

E.      Any such other, further, or different relief as the Court may deem just and proper.

## COUNT II
## NEGLIGENCE/WANTONNESS
## (ALL DEFENDANTS)

36.     Plaintiffs adopt each and every allegation contained in the preceding paragraphs as if the same were set forth fully herein.

37.     Defendants negligently and/or wantonly committed the acts and/or omission as set forth in the Statement of Facts herein and/or otherwise, including but not limited to, negligently and/or wantonly contacted Plaintiffs and negligently and/or wantonly managing, controlling, servicing, administering, processing and/or handling the account of Plaintiffs.

38.     As a proximate result of Defendants' actions, Plaintiffs were caused to suffer actual damage to their credit and credit reputation, worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain, and mental anguish and emotional distress.  Plaintiffs were also caused to incur out of pocket expenses and attorneys' fees.

39.     Plaintiffs claim punitive damages of Defendants due to the reckless and/or wanton nature of their conduct.

WHEREFORE, the Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with costs and interests, in an amount as determined by a trial jury.

## COUNT III
## NEGLIGENT/WANTON TRAINING, HIRING AND/OR SUPERVISION
## (ALL DEFENDANTS)

40.     Plaintiffs adopt each and every allegation contained in the preceding paragraphs as if the same were set forth fully herein.

41.     Defendants negligently and/or wantonly hired; trained or failed to train; and/or supervised or failed to supervise various agents, servants, employees and/or independent contractors under their control and/or supervision.

42.     As a direct or proximate cause of the negligent and/or wanton hiring, training and/or supervision of Defendants, Plaintiffs were damaged as set forth herein.

43.     Plaintiffs claim punitive damages of Defendants due to the reckless and/or wanton nature of their conduct.

WHEREFORE, the Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with costs and interests, in an amount as determined by a trial jury.

**COUNT IV**
**FRAUDULENT MISREPRESENTATION**
**(CHASE)**

44.     Plaintiffs adopt each and every allegation contained in the preceding paragraphs as if the same were set forth fully herein.

45.     This action is brought pursuant to ALA. CODE §§ 6–5–100 and 6–5–101 (1975).

46.     As set forth in the Statement of Facts herein, specifically at paragraphs 16–18 and/or otherwise, Chase made misrepresentations of material fact to Plaintiffs.

47.     Defendants knew said misrepresentations were false, or said misrepresentations were made willfully, recklessly, wantonly, and/or innocently, but with the intention that Plaintiffs should rely on them.

48.     As a proximate result of Chase's misrepresentations, Plaintiffs were caused to suffer actual damage to their credit and credit reputation, worry, humiliation, fear, loss of sleep,

9

anxiety, nervousness, physical sickness, physical pain, and mental anguish and emotional distress.  Plaintiffs were also caused to incur out of pocket expenses and attorneys' fees.

49.     Plaintiffs claim punitive damages of Chase due to the reckless and/or wanton nature of its conduct.

WHEREFORE, the Plaintiffs demand judgment against Chase for compensatory and punitive damages, together with costs and interests, in an amount as determined by a trial jury.

## COUNT V
## FRAUDULENT DECEIT
## (CHASE)

50.     Plaintiffs adopt each and every allegation contained in the preceding paragraphs as if the same were set forth fully herein.

51.     This action is brought pursuant to ALA. CODE §§ 6–5–100, 6–5–103 and 6–5–104 (1975).

52.     As set forth in the Statement of Facts herein and/or otherwise, Chase: (a) suggested facts which were not true and did not believe said suggestions to be true; (b) suggested facts which were not true and had no reasonable ground for believing them to be true; (c) suppressed or concealed facts which it was duty bound to disclose; and/or (d) made a promise without any intention of performing it.

53.     Chase's conduct as set forth above caused and/or induced Plaintiffs to act to their substantial detriment, thus causing the following injuries and damages:  actual damage to their credit and credit reputation, worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain, and mental anguish and emotional distress.  Plaintiffs were also caused to incur out of pocket expenses and attorneys' fees.

54.     Plaintiffs claim punitive damages of Chase due to the reckless and/or wanton nature of its conduct.

WHEREFORE, the Plaintiffs demand judgment against Chase for compensatory and punitive damages, together with costs and interests, in an amount as determined by a trial jury.

## COUNT VI
## INVASION OF PRIVACY
## (ALL DEFENDANTS)

55.     Plaintiffs adopt each and every allegation contained in the preceding paragraphs as if the same were set forth fully herein.

56.     By disclosing false information concerning Plaintiffs' alleged debt to third parties, specifically, Plaintiffs' family members and/or employers, Defendants have invaded the privacy of Plaintiffs.

57.     As a proximate result of such acts, Plaintiffs suffered economic and emotional damages as set forth herein.

58.     Plaintiffs claim punitive damages of Defendants due to their wanton, reckless, and/or malicious conduct.

WHEREFORE, the Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with costs and interests, in an amount as determined by a trial jury.

## COUNT VII
## VIOLATION OF AUTOMATIC STAY
## (ALL DEFENDANTS)

59.     Plaintiffs adopt each and every allegation contained in the preceding paragraphs as if the same were set forth fully herein.

11

60.     Upon the filing of bankruptcy protection by Shaye on January 17, 2012, the automatic stay imposed by 11 U.S.C. § 362(a) was triggered.  Defendant Chase had actual and/or constructive knowledge of the pendency of Shaye's bankruptcy.

61.     Notwithstanding Chase's actual knowledge of said bankruptcy, Chase, through its agents, Windsor and/or Omni, violated the automatic stay imposed by 11 U.S.C. § 362(a) by:  (a) annoying, abusing, bothering and/or harassing Plaintiffs with inappropriate and/or threatening phone calls; (b) attempting to repossess Plaintiffs' automobile on multiple occasions; and (c) ultimately repossessing Plaintiffs' automobile before the automatic stay was lifted.

62.     As a proximate result thereof, Plaintiffs have been damaged as set forth herein. Further, because Defendants acted knowingly and willfully, punitive damages should be imposed.

WHEREFORE, pursuant to 11 U.S.C. § 362(k), Plaintiffs request an award of actual damages, punitive damages, costs and attorneys' fees, and/or any such further, other, or different relief as may be just and equitable under the circumstances.

Respectfully submitted this the 16th day of April 2012.

WHITTELSEY, WHITTELSEY & POOLE, P.C.

/s/ Robert G. Poole
BY:    ROBERT G. POOLE (POO014)
        JONATHAN K. CORLEY (COR049)
        Attorney for Plaintiffs
        Post Office Box 106
        Opelika, Alabama 36803–0106
        Tel.:   (334) 745–7766
        Fax:   (334) 745–7666
        E-mail:bpoole@wwp-law.com
                jcorley@wwp-law.com

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**
**AS TO ALL CLAIM SO TRIABLE**

/s/ Robert G. Poole
ROBERT G. POOLE

**SERVE DEFENDANTS VIA CERTIFIED MAIL:**

**Omni Recovery Service of Alabama, Inc.**
c/o George B. Wilkins, Jr.
1112 South 23rd Street
Birmingham, Alabama 35215

**Chase Auto Finance Corp.**
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

**Windsor Equity Group, Inc.**
3819 Towne Crossing Boulevard
Mesquite, Texas 75150